| | |
|---|---|
| CLARK DEMETRO, Union County, New Jersey, and CLARK & SONS CONSTRUCTION, LLC, Union County, New Jersey, | Civ. No. 14-6521 (KM) (SCM) |
| Plaintiffs, | OPINION |
| v. | |
| NATIONAL ASSOCIATION OF BUNCO INVESTIGATIONS, Baltimore County, Maryland, and ROBERT POCHEK, individual capacity, Middlesex County, New Jersey, and TOWNSHIP OF WOODBRIDGE, NEW JERSEY, and JOHN DOE, | |
| Defendants. | |

KEVIN MCNULTY, U.S.D.J.:

## I.     INTRODUCTION

The plaintiffs, Clark Demetro ("Demetro") and Clark & Sons Construction, LLC ("Clark & Sons") brought this action against Defendants National Association of Bunco Investigators ("NABI"),[1] Robert Pochek, and the Township of Woodbridge, NJ, based on allegedly defamatory statements and violations of Demetro's rights under the constitutions and laws of the United States and New Jersey. Plaintiffs' amended complaint (ECF no. 21, referred to herein as the "Complaint" and cited as "AC") asserts claims of (1) common law defamation and false light (Counts 1, 3, and 4); (2) commercial disparagement (Count 2); (3) violations of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act

---

[1]     NABI was incorrectly pled as the "National Association of Bunco *Investigations*."

("NJCRA"), N.J. Stat. Ann. § 10:6–1 *et seq.* (Count 5); (4) violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12(f) based on discrimination in a place of public accommodation (Count 6); and (5) civil conspiracy under 42 U.S.C. § 1985 and the NJLAD (Count 7).

Now before the Court is NABI's motion (1) to vacate entry of default pursuant to Fed. R. Civ. P. 55(c); (2) to dismiss the amended complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2); and (3) to dismiss the AC for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF no. 47)

## II.   BACKGROUND

### A. Factual Background[2]

The allegations of the Complaint are taken as true for purposes of this motion. Plaintiff Clark Demetro is a New Jersey citizen residing in Union County. (AC p. 2) Plaintiff Clark & Sons Construction, LLC, is a New Jersey limited liability company owned by Demetro. (*Id.*) Defendant NABI is a 501(c)(3) organization, incorporated in Maryland. (*Id.*) Defendant Robert Pochek ("Pochek") is a New Jersey citizen, a member of NABI, and is a police officer in the Township of Woodbridge, New Jersey. (*Id.* at 3)

According to the Complaint, NABI is an organization primarily composed of law enforcement personnel "who work in concert to operate as a 'Gypsy Task

---

[2]    Record items cited repeatedly will be abbreviated as follows

| | |
|---|---|
| "AC" = | Amended Complaint (ECF no. 21) |
| "Def. Br." = | Memorandum of Law in Support of Defendant National Association of Bunco Investigators, Inc.'s Motion to Vacate Entry of Default and to Dismiss All Claims and Cross-Claims Against National Association of Bunco Investigators, Inc. (ECF no. 49) |
| "Pl. Opp." = | Memorandum of Law in Opposition to National Association of Bunco Investigators, Inc.'s Motion to Vacate Default and Dismiss All Claims and Cross-Claims (ECF no. 55) |
| "Def. Reply" = | Defendants' Letter Reply Brief (ECF no. 56) |

Force.'" (AC, Facts Common to All Counts, ¶ 6) The term "Gypsy" is a derogatory epithet used to describe Romani, a distinct ethnic population of Asian origin. (*Id.* ¶¶ 1, 5) Historically, Romani individuals "have suffered discrimination based on assumed connection between criminality and their race/national origin." (*Id.* ¶ 1) NABI refers to Romani as "Gypsies." (*Id.* ¶ 3)

NABI recruits law enforcement officers to join, regular membership is open only to law enforcement personnel.[3] NABI encourages its regular membership to share information on "Gypsies" to "better enable its law enforcement members to identify, target, capture and prosecute 'Gypsies' but in reality to advance its agenda of illegally profiling and targeting persons of Romani descent." (*Id.* ¶¶ 10, 13, 15 ) NABI's law enforcement members share their information on "Gypsy 'criminals'" by submitting postings on Gypsies to the NABI website as well as other, more traditional means." (*Id.* ¶ 16) NABI's methods of distributing the information include training seminars, a bi-monthly bulletin, a weekly intelligence log, and a database of suspects, "substantially all of whom are 'Gypsies' or persons of Romani ethnicity." (*Id.* ¶ 18) The shared information often includes confidential personal identifiers such as social security numbers or FBI identification numbers. (*Id.* ¶ 17)

Particularly relevant to the claims in this action is the "'Gypsy' Gallery" on NABI's website. (*Id.* ¶¶ 26–29) The Gallery includes color photos of individuals with their names, social security numbers and FBI numbers, dates of birth, last known address or location, and an "[i]nformative paragraph describing (through the 'colored' language of the submitter and NABI) the crimes the individual has [allegedly] committed." (*Id.* ¶ 27) (parentheticals in original) This information is provided by NABI's law enforcement members, who are encouraged by NABI to "share data obtained in the course of the performance of their official State sanctioned activities." (*Id.* ¶ 29)

---

[3] NABI also has associate members.

Plaintiff Demetro is ethnically Romani, and "by virtue of his physical appearance and surname, is readily identified as Romani by other Romani, the police, and NABI." (*Id.* ¶¶ 45–46) Starting as early as 2002, and through 2014, NABI, "by and through its law enforcement members," has posted on its website confidential information about Demetro, such as his social security number and FBI identification number, together with a photograph of Demetro. The website has "[f]alsely labeled Demetro as a 'Gypsy' criminal, who uses his construction business to commit fraud and who has a propensity to assault police officers and women." (*Id.* ¶ 48)

The Complaint specifically identifies three different statements about Demetro that NABI has shared with its members between 2002 and 2014. First, around April 12, 2002, NABI published on its website, and e-mailed to its regular membership, a statement that "Demetro has an extensive record for assaulting police and resisting arrest when police are called to domestic situations involving him." (AC, Count 4, ¶¶ 1–9) Second, around March 30, 2012, NABI published on its website a statement that "Demetro is involved in several scams involving Auto body work and Psychic readings." (*Id.*, Count 3, ¶¶ 1–9) Third, around May 22, 2014, NABI published information provided by Defendant Robert Pochek that Demetro "uses his home improvement company, Clark & Son Construction, to scam victims into paying for work that is never performed." (*Id.*, Count 1, ¶¶ 1–9)

The AC alleges that "Police officers, primarily in the State of New Jersey, have targeted Demetro based on the false perception, taught by NABI, that 'Gypsies' are inherently criminal." (*Id.*, Facts Common to All Counts, ¶ 49) As a result, Demetro has been charged with around 26 crimes since 1998. All but three of those criminal proceedings "terminated in Demetro's favor." (*Id.* ¶ 79)

### B. Procedural Background

On October 21, 2014, the plaintiffs filed their original complaint in this action. (ECF no. 1) On November 4, 2014, the original complaint was served on Pochek at the Woodbridge Police Department. (ECF no. 3) On December 26,

2014, Plaintiffs served the original complaint on Keith Striffolino ("Striffolino"), a member of NABI's board of directors, through Kathy Hassan ("Hassan"), a clerk at the Bayonne Police Department, where Striffolino works as a Detective. (ECF no. 6) On January 22, 2015, the Clerk of Court entered default against NABI. (ECF no. 8)

On November 24, 2015, Plaintiffs filed an amended complaint. (ECF no. 21) On January 12, 2016, Plaintiffs served the amended complaint on Striffolino, who at that time was still a member of NABI's board of directors. (ECF no. 29) On March 17, 2016, the Clerk of Court entered default as to NABI for failure to plead or otherwise defend. (ECF no. 30)

On December 9, 2016, counsel for NABI entered notices of appearance. (ECF nos. 43, 44, 46) On January 6, 2017, NABI filed its motion to vacate the entry of default and to dismiss all claims for lack of personal jurisdiction and failure to state a claim. (ECF no. 47) That motion is now before the Court.

## III. DISCUSSION AND ANALYSIS

### A. Rule 55(c) Motion to Vacate Default

#### 1. Standard

Under Fed. R. Civ. P. 55(c), a district court "may set aside an entry of default for good cause." The decision whether to vacate a default judgment is left "to the sound discretion of the trial court." *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir.1951). In exercising this discretion, a court must consider (1) "whether the plaintiff will be prejudiced," (2) "whether the defendant has a meritorious defense," and (3) "whether the default was the result of the defendant's culpable conduct." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 256-57 (3d Cir. 2008) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)). In essence, the factors to be considered in determining whether to vacate the entry of default are the same as those to be considered with respect to a default judgment; the parties' positions are simply flipped.

When a party moves to set aside a default, any doubts as to whether the default should be vacated "should be resolved in favor of setting aside the default and reaching a decision on the merits." *Gross v. Stereo Component Sys. Inc.*, 700 F.2d 120, 122 (3d Cir. 1983). "Less substantial grounds may be adequate for setting aside a default than would be required for opening a judgment." *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982).

## 2. NABI's Motion to Vacate Default

I find that the evaluation of these three factors weighs in favor of granting NABI's motion to vacate the Clerk's entry of default.

### a. Factor 1 – Prejudice to the Plaintiff

Prejudice is found where "a plaintiff's ability to pursue the claim has been hindered by, for example, loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523-24 (3d Cir. 2006) (citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982)). Mere delay in the adjudication of a claim does not by itself establish prejudice. *See Feliciano*, 691 F.2d at 656-57 ("Delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening a default judgment entered at an early stage of the proceeding.").

Here, there is no discernible prejudice to the Plaintiffs that would result from setting aside the default. The parties identify nothing of significance that has occurred in the interim. Plaintiffs state in conclusory fashion that for nearly two years they have "relied on the entry of the default judgment against NABI in making strategic decisions regarding discovery, witnesses, [and] evidence in support of its claims against NABI." (Pl. Opp. 3–4) There is no indication, however, that evidence has been lost or witnesses have become unavailable. Similarly, the contention that "the Plaintiffs have incurred costs in obtaining the defaults in this matter and in developing this matter for trial while relying on the previously entered default," (*id.*), is insufficient. Mere delay is not a sufficient basis for finding prejudice; obtaining a clerk's entry of default

6

is a fairly simple and routine process; and if the cost of obtaining entry of default counted as prejudice, then no default could be vacated. Further, as NABI notes (Def. Reply 4), Plaintiffs have not taken the next step of seeking an actual default judgment against NABI.

Accordingly, I find that this factor weighs in favor of vacating the entry of default.

### b. Factor 2 – Meritorious Defense

In determining whether to vacate the entry of default, a court must determine whether the "allegations of defendant's answer, if established at trial, would constitute a complete defense to the action." *$55,518.05 in U.S. Currency*, 728 F.2d at 195. The defendant need not prove that he will prevail at trial, but merely demonstrate that he has a defense which is meritorious on its face. *Id.* Here, NABI presents facially meritorious defenses.

First, NABI argues that Plaintiffs' defamation and false light claims (Counts 1, 3, and 4) are barred by the applicable statute of limitations. Specifically, NABI contends that Plaintiffs' defamation claims are untimely under N.J. Stat. Ann. § 2A:14-3. As to Counts 3 and 4 at least, that defense is meritorious on its face and justifies dismissal. *See* Section III.C.2, *infra.*

Second, NABI presents defenses on the merits. NABI contends, for example, that the allegedly defamatory statements were true, which of course is a complete defense to defamation. NABI also pleads more specific defenses to individual counts. Some are upheld in relation to NABI's motion to dismiss; others may have to await factual development. *See* Section III.C, *infra, passim.*

Whether or not NABI will ultimately prevail, it has presented facially meritorious defenses. Accordingly, I find that this factor weighs in favor of setting aside the entry of default.

### c. Factor 3 – Culpability

Finally, I consider whether the default was the result of NABI's culpable conduct. *$55,518.05 in U.S. Currency*, 728 F.2d at 195. Culpable conduct means "more than mere negligence," and connotes willfulness, bad faith, and

intentionally avoidance of compliance with court procedures, or "reckless disregard for repeated communications from plaintiffs and the court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1182–83 (3d Cir. 1984). The failure to respond to a claim, especially where it is the result of miscommunication or ignorance, rather than bad faith or defense gamesmanship, will generally not be considered culpable conduct. *Malibu Media, LLC v. Waller*, No. 15CV03002WHWCLW, 2016 WL 184422, at *4 (D.N.J. Jan. 15, 2016) (citing *Wingate Inns Intern., Inc. v. P.G.S., LLC*, 2011 WL 256327, at *4 (D.N.J. Jan. 26, 2011)).

According to NABI, it never answered Plaintiffs' original or amended complaints because it was never properly served with either. (Def. Br. 3–4) That is so, says NABI, because "Ms. Hassan has never been NABI's registered agent and has never been authorized to accept service of process on behalf of NABI," and Detective Striffolino has never "been NABI's registered agent." (*Id.*) In fact, "[t]o date, neither [NABI Executive Director Peter] Robinson nor NABI's registered agent authorized to accept service of process on behalf of NABI ha[s] been served with plaintiffs' Summonses and/or Complaints. (*Id.* at 4) NABI says it "learned about this lawsuit and entries of default through information provided to its Executive Director, Mr. Robinson, by co-defendant Robert Pochek, a member of NABI." (*Id.*)

However, as Plaintiffs note (Pl. Opp. 1–2), service of process upon a director of a corporation in New Jersey is effective, irrespective of whether the corporation specifically designated that person to accept service. Fed. R. Civ. P. 4(h)(1) governs service of process upon corporations. Rule 4(h)(1) incorporates Rule 4(e)(1), which allows service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Process was delivered within this State, and New Jersey State Court Rule 4:4-4(a)(6) provides in relevant part that service may be made "[u]pon a corporation, by serving a copy of the summons and complaint in the manner

prescribed by paragraph (a)(1) of this rule on any officer, *director*, trustee or managing or general agent . . . ." *Id.* (emphasis added).

Thus, the efficacy of Demetro's service of the original and amended complaints upon NABI turns on whether each service attempt complied with New Jersey State Court Rule 4:4-4(a)(1), which provides for service

> by delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein, or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf.

*Id.*

First, NABI raises doubts as to whether service of the original complaint on December 26, 2014, complied with the requirements of New Jersey State Court Rule 4:4-4(a)(1). The process server purported to serve Detective Striffolino. Striffolino, in turn, is a director of NABI, so valid service on him would be service on NABI.

What the process server did, however, was deliver the complaint to Hassan, intending that it reach Striffolino. Woodbridge Police Department is Striffolino's place of employment, not his dwelling place or usual place of abode. The affidavit of service states that the process server "[l]eft a copy with a person authorized to accept service . . . ." (ECF no. 6) NABI does not challenge Hassan's authorization to receive service of process *for Striffolino*; it only argues that she is not authorized to receive service of process *for NABI,* which is not plaintiff's claim. (*See* Def. Br. 3) I will assume for purposes of argument that the original complaint was properly served, through Hassan, on NABI's director Keith Striffolino, who is authorized by New Jersey State Court Rule 4:4-4(a)(6) to receive process on NABI's behalf.[4]

---

[4]    It is also certain that the amended complaint was served on Mr. Striffolino "personally," if tardily, on December 12, 2016. *See* Fed. R. Civ. P. 4(m) (in 2014, requiring service of process within 120 days of filing the complaint).

Another possible route to a finding of proper service is through Rob Pochek, NABI's codefendant. Although Pochek was not specifically identified in his capacity in the organization, he was served, and is alleged to be a Board member. (AC ¶ 21 & Ex. 11) See 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1102 (4th ed.) (citing Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994) (Service of process on the president and sole shareholder of a corporation was effective service on the corporation, even though the president was himself a defendant named in the complaint, and affidavit of service did not refer to his corporate capacity.)).

NABI argues for purposes of this motion to vacate default that, even if it erred, it acted in good faith. Its Executive Director, "Peter Robinson, who is not a lawyer, was acting under the good faith belief that NABI was not previously served with plaintiffs' pleadings." (Def. Reply 4; see also Robinson Aff., ECF no. 48-2, ¶ 18) Plaintiffs offer a different perspective, arguing that given the fact that both Striffolino, a director, and Pochek, a trustee, "were served with copies of the complaint," and Pochek "not only was served, but is named as a Defendant, and has defended this action in his personal capacity . . . NABI cannot deny knowledge of the complaint or the pending action and could have answered the Complaint earlier." (Pl. Opp. 2)

NABI, if it meant to contest service, could have done so—not just ignored the Complaint, of which it surely must have had actual notice. (It admits learning of this action from Pochek. (Def. Br. 3–4)) This third factor, then, is somewhat unfavorable to NABI.

On balance, I find that at least two factors weigh in favor of setting aside the Clerk's entry of default against NABI, and that the third, if unfavorable, is not strongly so. Indulging, as always, a strong preference for getting to the merits of cases, I will therefore exercise my discretion to vacate entry of default.

I proceed to consider NABI's motion to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim.

## B. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

### 1. Standard

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing sufficient facts to show that jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2001). While a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff, *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), it must still examine any evidence presented with regard to disputed factual allegations. *See, e.g., Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155-56 (3d Cir. 2010) (examining the evidence supporting the plaintiff's allegations); *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) ("'Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.'") (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

The plaintiff "need only establish a prima facie case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Nevertheless, a plaintiff may not "rely on the bare pleadings alone" in order to withstand a motion to dismiss for lack of personal jurisdiction. "Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Patterson*, 893 F.2d at 604 (internal citations omitted); *Time Share Vacation Club*, 735 F.2d at 66 n.9.

To assess whether it has personal jurisdiction over a defendant, a district court will undertake a two-step inquiry. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998). First, the court is required to use the relevant

11

state's long-arm statute to see whether it permits the exercise of personal jurisdiction. *Id.;* Fed. R. Civ. P. 4(k). "Second, the court must apply the principles of due process" under the federal Constitution. *WorldScape, Inc. v. Sails Capital Mgmt.,* Civ. No. 10–4207, 2011 WL 3444218 (D.N.J. Aug. 5, 2011) (citing *IMO Indus.,* 155 F.3d at 259).

In New Jersey, the first step collapses into the second because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales,* 384 F.3d at 96 (citing N.J. Ct. R. 4:4-4(c)). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "'certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154 (1945)).

A district court may hear a case involving a non-resident defendant if it possesses either of two kinds of personal jurisdiction: general or specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 & n.9 (1984). A court may exercise general jurisdiction over a foreign corporation where "the defendant's contacts with the forum are so 'continuous and systematic' as to render them essentially 'at home' in the forum state." *Senju Pharmaceutical Co., Ltd. v. Metrics, Inc.,* 96 F. Supp. 3d 428, 435 (D.N.J. 2015) (citing *Daimler AG v. Bauman,* 134 S. Ct. 746, 754 (2014)); *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851 (2011); *Helicopteros,* 466 U.S. at 414.

In contrast to general jurisdiction, specific jurisdiction relies on the defendant's forum-related activities that give rise to the plaintiff's claims. *See Helicopteros,* 466 U.S. at 413-14. Establishing specific jurisdiction involves a three-part inquiry: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of

the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). The defendant need not be physically located in the state while committing the alleged acts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Nor is specific jurisdiction defeated merely because the bulk of harm occurred outside the forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984). A single act may satisfy the minimum contacts test if it creates a substantial connection with the forum. *Burger King*, 471 U.S. at 476 n.18.

### 2. Personal Jurisdiction in this Case

Here, the plaintiffs have not established that this Court possesses general personal jurisdiction over NABI, but they have successfully established specific personal jurisdiction.

### a. General Personal Jurisdiction

Plaintiffs argue that NABI's contacts with New Jersey are so substantial that "general jurisdiction is both proper and established against [NABI] based on the routine contacts with New Jersey and the continual operations in New Jersey by NABI and its members." (Pl. Opp. 8) The contacts that allegedly establish general personal jurisdiction are: (1) "electronic communications directed to New Jersey via email, a website and Internet advertising"; (2) "[t]he information compiled by the Defendant regarding New Jersey residents is submitted via email and other electronic methods by members in the State of New Jersey"; and (3) NABI's "operat[ion of] seminars and other informational programs in New Jersey." (*Id.*) In sum, Plaintiff's argument for general personal jurisdiction over NABI is that NABI "routinely collects and distributes data throughout New Jersey from law enforcement officers employed in New Jersey by New Jersey municipalities and law enforcement agencies." (*Id.*) In my view, that is not sufficient to confer general jurisdiction.

As the Supreme Court has explained, "a corporation is generally, 'at home' in its 'place of incorporation and principal place of business.'" *Chavez v.*

*Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (quoting *Daimler AG*, 134 S. Ct. at 760). Indeed, "it is 'incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business.'" *Id.* (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (emphasis added)).

NABI "is not incorporated [in New Jersey], does not maintain an office there, and does not supervise its business there." *Id.* NABI is a Maryland non-profit corporation which was headquartered in Maryland until 2013 and in Florida thereafter. (Robinson Aff., ECF no. 48-2, ¶¶ 2–4) The contacts cited by Plaintiffs amount only to evidence that NABI conducts activities in New Jersey, not that it is any more "at home" in New Jersey than in any other state in which its law enforcement members reside and work. Thus, Plaintiffs have failed to establish this Court's general jurisdiction over NABI.

### b. Specific Personal Jurisdiction

Plaintiffs contend that this Court has specific personal jurisdiction over NABI. I agree.

NABI's challenge focuses exclusively on its assertion that Plaintiffs have not alleged that NABI "directed any of its activities into New Jersey." (Def. Br. 13) (contending that it need not address the "fair play and substantial justice" prong of the specific personal jurisdiction inquiry because the plaintiffs are unable to establish purposeful direction) NABI cites the "effects test" established by the Supreme Court for analyzing the existence of specific jurisdiction over non-resident defendants in the context of an intentional tort occurring outside the forum state. (*Id.*) Under the effects test, a plaintiff must establish that:

(1) The defendant committed an *intentional tort*;

(2) The plaintiff *felt the brunt of the harm in the forum* such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;

> (3) The defendant *expressly aimed his tortious conduct at the forum* such that the forum can be said to be the focal point of the tortious activity.

*Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Here, NABI does not dispute that Plaintiffs have alleged that NABI committed an intentional tort and that the plaintiffs felt the brunt of the alleged harm in New Jersey. Instead, NABI argues that the plaintiffs have failed to allege facts to establish that NABI "aimed [its alleged] tortious conduct" at New Jersey. (Def. Br. 13–14)

NABI's argument rests, not on the Plaintiffs' actual allegations, but on its characterization of them. According to NABI, Plaintiffs allege that NABI directed its activities towards New Jersey by operating a website accessible from New Jersey, and by distributing an e-mail newsletter from its Florida office to members all over North America, including New Jersey. (Def. Br. 13–16) NABI notes, correctly, that the maintenance of a passive informational website is insufficient to establish personal jurisdiction. *Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 726 (3d Cir. 2009) ("[T]he mere posting of information or advertisements on an Internet website does not confer nationwide personal jurisdiction.") (quoting *Remick,* 238 F.3d at 259 n.3). Further, the Third Circuit "has held that 'telephone communications or mail sent by a defendant [do] not trigger personal jurisdiction if they 'do not show purposeful availment.'" *Machulsky v. Hall*, 210 F. Supp. 2d 531, 539 (D.N.J. 2002) (quoting *Barrett v. Catacombs Press,* 44 F. Supp. 2d 717, 729 (E.D. Pa. 1999) (quoting *Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros.*, 983 F.2d 551, 556 (3d Cir. 1993))). NABI argues that "Plaintiffs do not even attempt to allege that the dissemination" of the information in the e-mail newsletter, which was distributed to all of NABI's members in the USA and Canada, "was specifically directed to NABI members in New Jersey." (Def. Br. 16)

I agree with NABI that merely maintaining a site with worldwide internet access does not subject a company to "the jurisdiction of every state in the

nation" where a person may have logged on. (Def. Br. 16) But Plaintiffs are not saying that.

The Complaint concededly is not a model of clarity. But it sufficiently alleges, for example, that Pochek is a New Jersey law enforcement officer. And it alleges that that NABI, through law enforcement members such as Pochek, "accessed state information" (in Demetro's case, information inferably obtained in the State of New Jersey) "such as Demetro's social security number . . . and listed same on the NABI website below Demetro's photograph." (AC, Facts Common to All Counts, ¶ 48) Further, Pochek, as a NABI member, was allegedly "encouraged to share data obtained in the course of the performance of [his] official [New Jersey] State sanctioned activities for the purposes" of "better enabl[ing] [NABI's] law enforcement members to identify, target, capture and prosecute 'Gypsies' but in reality to advance its agenda of illegally profiling and targeting persons of Romani descent" (*id.* ¶¶ 15, 29)—which, according to the Complaint, Pochek did.

In short, read in the light most favorable to the Plaintiffs, the Complaint alleges that NABI intentionally used Pochek, a New Jersey law enforcement officer, to obtain information in the course of Pochek's police work in New Jersey, in order to distribute that information to NABI's membership, which includes many law enforcement officers in New Jersey, to identify and target Demetro, a New Jersey resident. I think that is sufficient to show that this litigation "arises out of or relates to at least one of the contacts" that NABI "purposefully directed" at New Jersey. *See Sandy Lane Hotel Co., Ltd.*, 496 F.3d at 317. [5]

Now it is true that NABI's e-mail newsletter *also* included information about individuals located outside New Jersey, and that NABI sent the bundled

---

[5]     Several other facts that Plaintiffs cite, however, do not establish specific personal jurisdiction. It may be true that NABI "solicits contributions in New Jersey," and that "NABI conducts seminars . . . in New Jersey." (Pl. Opp. 7) This litigation, however, does not appear to arise out of or relate to NABI's solicitation of contributions or its seminars.

information in mass emails to its entire regular membership, most of whom may reside outside of New Jersey. Those circumstances do not negate the fact that NABI's publication of *this information about Demetro* can fairly be said to be aimed at New Jersey. I therefore find that specific jurisdiction, which focuses on the particular claim at issue, is established.

Accordingly, NABI's motion to dismiss for lack of personal jurisdiction is DENIED.

### C. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

#### 1.  Standard

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility

17

standard is not akin to a 'probability requirement' … it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 & n.7 (3d Cir. 2016); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

### 2. Amended Complaint

I now address NABI's specific challenges to each count of the Complaint.

### a. Defamation & False Light (Counts 1, 3, and 4)

In Counts 1, 3, and 4 of the Complaint, Plaintiffs assert tort claims for defamation and false light. Count 1 asserts a claim for defamation only, arising from NABI's publication on May 22, 2014, of Robert Pochek's statement that [Demetro] "uses his home improvement company, Clark & Son Construction, to scam victims into paying for work that is never performed." (AC, Count 1, ¶¶ 1–9) Count 3 asserts claims for defamation and false light arising from NABI's publication on March 30, 2012, of a statement that "Demetro is involved in several scams involving Auto body work and Psychic readings." (AC, Count 3, ¶¶ 1–9) Count 4 asserts claims for defamation and false light arising from NABI's publication on April 12, 2002, of a statement that "Demetro has an extensive record for assaulting police and resisting arrest when police are called to domestic situations involving him." (AC, Count 4, ¶¶ 1–9)

NABI argues that any defamation or false light claim is untimely.[6] (Def. Br. 18–19) The statute of limitations for defamation and false light is one year:

---

[6]    The statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c). In this Circuit, it may be raised on a Rule 12(b)(6) motion, but the motion cannot be granted unless the time bar is established on the face of the complaint. *Fried v. JP*

"Every action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander." N.J. Stat. Ann. § 2A:14-3; *see also Johnson v. Peralta*, 599 F. App'x 430, n.1 (3d Cir. 2015) (stating that "§ 2A:14–3 applies to all false light and defamation claims").

That one-year limitations period stops running when the action is "commenced." N.J. Stat. Ann. § 2A:14-3. Under New Jersey State Court Rule 4:2-2 "A civil action is commenced by filing a complaint with the court." *See also Rogers v. Dubac*, 52 N.J. Super. 360, 362, 145 A.2d 519, 520 (Law Div. 1958) (holding that "[i]nasmuch as civil actions are commenced by the filing of a complaint with the court . . . th[e] action is not barred by the statute of limitations," and considering as a distinct issue defendant's right to move for a dismissal of the complaint for plaintiff's failure to cause summons to issue within a statutorily specified time). This original complaint in this action was filed on October 21, 2014. (ECF no. 1) Accordingly, any action for defamation or false light that accrued more than one year prior to that date—*i.e.*, before October 21, 2013—is barred by the expiration of the statute of limitations.

Counts 3 and 4 must be dismissed. Count 3 alleges that defamatory statements were published in March 2012; Count 4 alleges statements dating back to April 2002. Both dates are well before October 13, 2013. Accordingly, the motion to dismiss Counts 3 and 4 on statute of limitations grounds will be GRANTED.

Count 1, however, asserts a defamation claim based on a statement allegedly published on May 22, 2014. That date, on its face, is within the limitations period. Accordingly, the motion to dismiss Count 1 on statute of limitations grounds is DENIED.

---

*Morgan Chase & Co.,* 850 F.3d 590, 604 (3d Cir. 2017). Any statute of limitations issue requiring factual development must await summary judgment.

### b. Commercial Disparagement (Count 2)

Count 2 alleges commercial disparagement of Demetro's business. It is based on NABI's publication of Pochek's May 22, 2014 statement that Demetro "uses his home improvement company, Clark & Son Construction, to scam victims into paying for work that is never performed."

Trade libel, also known as "commercial disparagement" or "product disparagement," is a somewhat amorphous designation. It encompasses defamation especially directed to the plaintiff's trade or business. *See Patel v. Soriano,* 848 A.2d 803, 834 (N.J. Super. Ct. App. Div. 2004) (discussion of the contours of the tort). To make out a trade libel claim, a plaintiff must establish "(1) publication; (2) with malice; (3) of false allegations concerning its property, product or business; and (4) special damages, *i.e.,* pecuniary harm." *Mayflower Transit, LLC v. Prince,* 314 F. Supp. 2d 362, 378 (D.N.J. 2004).

According to NABI, this cause of action must be dismissed because Plaintiffs have failed to plead special damages. (Def. Br. 19; Reply Br. 8) I agree.

"Unlike ordinary defamation actions, an action for product disparagement 'requires special damage in all cases . . . .'" *Mayflower Transit, LLC v. Prince,* 314 F. Supp. 2d 362, 378 (D.N.J. 2004) (quoting *Sys. Operations, Inc. v. Sci. Games Dev. Corp.,* 555 F.2d 1131, 1144 (3d Cir. 1977)). A showing of special damages requires proof of items such as "the loss of particular customers by name, or a general diminution in its business and extrinsic facts showing that such special damages were the natural and direct result of the false publication." *Juliano v. ITT Corp.,* 1991 WL 10023, at *6 (D.N.J. Jan. 22, 1991); *Bocobo v. Radiology Consultants of South Jersey, P.A.,* 477 F. App'x 890, 901 (3d Cir. 2012) (upholding summary judgment for defendants on trade libel claim for lack of showing of damages); *Arista Records, Inc. v. Flea World, Inc.,* 356 F. Supp. 2d 411, 428 (D.N.J. 1995) (finding allegations that defendants were "damaged" and that statements "curtail[ed] legitimate business" were insufficient). "[W]hereas the need to demonstrate damages is waived in a defamation suit where the statement is oral, constitutes slander per se, and

concerns conduct incompatible with the plaintiff's business, proof of damages is essential in an action for trade libel." *Patel v. Soriano*, 369 N.J. Super. 192, 247, 848 A.2d 803, 834 (App. Div. 2004) (internal citations omitted) (citing *McLaughlin v. Rosanio, Bailets & Talamo, Inc.,* 331 N.J. Super. 303, 313–14, 751 A.2d 1066 (App. Div. 2000); *Prosser & Keeton on Torts* § 128 at 970–71 (5th ed. 1984)).

With regard to damages, Count 2 alleges only that Pochek's statement "is of such a nature that a reasonable person would believe that it would cause financial harm to Clark & Sons," and that it is "clearly harmful to plaintiff, because it alleges that he has committed criminal activity and further that he does so through the use of business" (AC Count 2 ¶ 9) This does not even rise to the level of a factual allegation that NABI's publication of Pochek's statement harmed Demetro's business. Nor does it factually connect Pochek's statement to the loss of particular customers or other pecuniary loss. Even construed in the light most favorable to the plaintiffs, the Complaint fails to allege special damages.

Accordingly, NABI's motion to dismiss Count 2 will be GRANTED.

### c. Violations of Section 1983, N.J. Stat. Ann. § 10:6-1 ("NJCRA") (Count 5)

In Count 5, Plaintiffs assert claims under 42 U.S.C. § 1983 and the NJCRA, N.J. Stat. Ann. § 10:6–1 *et seq.*,[7] for (1) the deprivation of Demetro's liberty interest in his reputation, and (2) the violation of his right to Equal Protection. NABI argues that Demetro has failed to state a claim in Count 5.

### i.       Reputational Stigma

Count 5 alleges that Defendants unconstitutionally infringed Demetro's liberty and property interests in his personal reputation. The relevant

---

[7]     The NJCRA "was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitutions." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). "This district has repeatedly interpreted NJCRA analogously to § 1983." *Id*

statements allegedly "caused a stigma to Demetro and his reputation . . . because the statements which are communicated to law enforcement members, accuse Demetro of having a record of committing not only violent crimes, but violent crimes against police officers." (AC, Count 5, ¶ 3).

As the Third Circuit has held, "Stigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment." *Versarge v. Twp. of Clinton N.J.*, 984 F.2d 1359, 1371 (3d Cir. 1993) (quoting *Robb v. City of Phila.*, 733 F.2d 286, 294 (3d Cir. 1984)); *see also Filgueiras v. Newark Pub. Sch.*, 426 N.J. Super. 449, 474–75, 45 A.3d 986, 1001 (App. Div. 2012) (observing that the New Jersey Supreme Court has never "recognize[d] a liberty interest in one's reputation that is embedded in our constitution").

Here, Plaintiffs have not alleged any deprivation of present or future employment as a result of the allegedly defamatory statements. Accordingly, the Complaint fails to state a claim for a substantive due process violation based on harm to Demetro's reputation alone.

### ii. Equal Protection

Count 5 additionally alleges that NABI violated Demetro's right to equal protection of the laws under the federal and state constitutions.[8] The Fourteenth Amendment to the U.S. Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "Article I, paragraph 1 of the New Jersey Constitution has been interpreted 'as conferring the right of equal treatment under the law, a right analogous to the guarantee of equal protection under the Fourteenth Amendment.'" *In re D'Aconti*, 316 N.J. Super. 1, 19, 719 A.2d 652, 660 (App. Div. 1998) (citing *Doe v. Poritz*, 142 N.J. 1, 43, 662 A.2d 367 (1995)).

---

[8]     Although Count 5 is entitled, "Defamation and False Light," it unmistakably and explicitly asserts an equal protection claim in addition to the unavailing defamation-based substantive due process claim.

In essence, Demetro asserts a claim for racial profiling on the basis of his Romani or "Gypsy" ethnic group or race. (AC, Count 5, ¶¶ 6–9) To state an equal protection claim "in the racial profiling context, a plaintiff must allege that law enforcement actions: '(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose.'" *See Alvin v. Calabrese*, 455 F. App'x 171, 177 (3d Cir. 2011) (quoting *Bradley v. United States,* 299 F.3d 197, 205 (3d Cir. 2002)). To allege discriminatory effect, a plaintiff must allege "that she is a member of a protected class and that she was treated differently from similarly situated individuals in an unprotected class." *See id.* (quoting *Bradley*, 299 F.3d at 206).

NABI does not argue that Count 5 fails to allege discriminatory effect motivated by a discriminatory purpose. And it clearly does.[9]

Instead, NABI contends—almost in passing—that Demetro fails to allege that NABI was acting "under the color of state law." It is true that a Section 1983 claim would require that NABI acted "under color of state law." *Sprauve v.*

---

[9]     The Amended Complaint is replete with allegations of both. For example, Demetro alleges that "NABI is an association of national law enforcement personnel who train and otherwise perpetuate the dogma of 'selective profiling' of 'Gypsies.'" (AC, Nature of Action, ¶ 3) Further:

> NABI intentionally "shares" information, without any independent verification of the veracity of the information, on its target group, same being 'Gypsies', to allegedly further its[] purpose, to train, educate and better enable its law enforcement members to identify, target, capture and prosecute "Gypsies" but in reality to advance its agenda of illegally profiling and targeting persons of Romani descent.

(*Id.*, Facts Common to All Counts, ¶ 15) Demetro also alleges that:

> 6. Plaintiff, Demetro was treated differently than other similarly situated persons, of non-Gypsy origin, based on his classification as a member of the Gypsy race; and NABI and its law enforcement members' belief that classification as a Gypsy relates to the individual's propensity to commit crimes.

> 7. If Demetro was not Gypsy, he would not be continuously included on NABI and targeted by the law enforcement members of NABI, who have charged him approximately 26 times for crimes over the past 15 years; he would not be falsely accused of having a criminal record of violence.

(AC, Count 5, ¶¶ 6–7)

23

*W. Indian Co.*, 799 F.3d 226, 229 (3d Cir. 2015) (citing *Groman v. Twp. of Manalapan,* 47 F.3d 628, 638 (3d Cir. 1995)). The Equal Protection clause, too, is directed at official conduct, and therefore requires "state action." *Id.* (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S. Ct. 2744 (1982)). Those two analyses are equivalent. *Id.* (citing *Leshko v. Servis,* 423 F.3d 337, 339 (3d Cir. 2005)).

A court considering whether alleged conduct constituted state action must ask (1) "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority"; and (2) "whether the private party charged with the deprivation could be described in all fairness as a state actor." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620, 111 S. Ct. 2077, 2082–83 (1991) (citing *Lugar,* 457 U.S. at 937–42, 102 S. Ct. 2744). "[I]n determining whether a particular action or course of conduct is governmental in character, it is relevant to examine the following: the extent to which the actor relies on governmental assistance and benefits, whether the actor is performing a traditional governmental function, and whether the injury caused is aggravated in a unique way by the incidents of governmental authority." *Id.* at 621-22 (internal citations omitted).

The Complaint adequately alleges state action. First, Demetro alleges that his constitutional deprivation resulted from the selective use of the state law enforcement power to investigate, charge, and prosecute him. These are fundamental law enforcement responsibilities having their source in state authority. Second, Demetro has alleged facts that fairly characterize NABI as a state actor, alleging that NABI is an organization composed of law enforcement officers, to coordinate law enforcement activities, using information available through their positions in state law enforcement organizations.[10] At this, the pleading staging, that is enough.

---

[10]     Demetro alleges that NABI is an organization "comprised mainly of law enforcement members, who work in concert to operate as a 'Gypsy Task Force.'" (AC, Facts Common to All Counts, ¶ 6) NABI's purpose includes "[t]o share and to enhance

Accordingly, NABI's motion to dismiss the Equal Protection claim in Count 5 is DENIED.

### d. Public Accommodation Discrimination (Count 6)

In Count 6, Demetro asserts what appears to be a claim for the violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12(f), for discrimination in a place of public accommodation. "To state a claim on which relief can be granted, a plaintiff must show that '(1) defendant operates a place of public accommodation; (2) the plaintiff is a member of a protected class; and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class.'" *Vandeusen v. Mabel Realty of Bordentown, LLC*, No. CIV.A. 12-0330 JEI, 2012 WL 1664116, at *3 (D.N.J. May 11, 2012) (citing N.J. Stat. Ann. § 10:5–12(f); *Dasrath v. Continental Airlines, Inc.*, 2006 U.S. Dist. LEXIS 9707 at 7, 2006 WL 372980 (D.N.J. Feb. 16, 2006)).

Demetro contends that NABI's website is a place of public accommodation. (AC, Count 6, ¶ 4) Whereas, NABI replies that a place of accommodation must be a physical place. Indeed, the Third Circuit has held

communication between law enforcement agencies by distributing [state] information on Gypsies." (*Id.* ¶ 7) (emendation in original) "Regular Membership [in NABI] is restricted to individuals who are employed in law enforcement. Only regular members have full access to the NABI website and database." (*Id.* ¶ 10) "Every NABI Officer and every member of NABI's Board of Directors, Directors Emeritus, Board of Advisors and NABI's Webmaster is a police officer or comparable law enforcement agent and none are non-law enforcement." (*Id.* ¶ 20)

"Much of the information law enforcement members share is state information, some of which is extremely confidential, such as individual's social security number and identifiers such as their F.B.I. identification numbers." (*Id.* ¶ 17) "NABI would not be able to 'share' information to the degree it does if its members didn't utilize their access to State resources to obtain confidential and personal data on the 'Gypsies' listed in NABI's 'Gypsy' Gallery, such as their social security numbers." (*Id.* ¶ 19) "NABI intends the full, detailed information on each 'Gypsy' identified on the [s]ite as well as the information on how to identify potential 'Gypsy' crimes, to be used . . . by law enforcement members, including police officers and prosecutors, in the investigation of crimes in their relative jurisdiction and to target or profile Romani persons." (*Id.* ¶ 34)

that, in the context of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 ("ADA"), the term "public accommodation . . . is limited to physical accommodations." *Peoples v. Discover Fin. Servs., Inc.*, 387 F. App'x 179, 183 (3d Cir. 2010) (citing *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998)).

However, Demetro cites a New Jersey Appellate Division decision that requires consideration. In *Ptaszynski v. Uwaneme*, the court concluded that "the Township police department—both the building and the individual officers—is a place of public accommodation." 371 N.J. Super. 333, 347, 853 A.2d 288, 297 (App. Div. 2004). Demetro seeks to analogize NABI's internet presence to a municipal police force. (*See* Pl. Opp. 13–15) The legal question is unsettled, and the aptness of that analogy may depend on the facts as developed in discovery.

Accordingly, the motion to dismiss Count 6 is DENIED.

### e. Conspiracy under Section 1985 and the NJCRA (Count 7)

In Count 7, Demetro alleges that NABI, Pochek and unknown individuals conspired to violate Demetro's equal protection rights on account of Demetro's race/ethnicity in violation of 42 U.S.C. § 1985(3) and the NJCRA (AC, Count 7, ¶ 2)

"Civil rights conspiracies brought under Section 1983 and the NJCRA require a 'meeting of the minds,' and to survive a motion to dismiss, a plaintiff must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action." *Obataiye v. Lanigan*, No. CV 14-5462 (FLW), 2016 WL 5387626, at *6 (D.N.J. Sept. 26, 2016) (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008)).

NABI argues that the Complaint does not set forth any allegation regarding a plot to deny plaintiffs of their civil rights. (Def. Br. 22–23) I disagree.

The Complaint alleges enough of a factual basis to plausibly support the existence of an agreement and concerted action. Demetro alleges that NABI is an

26

organization "comprised mainly of law enforcement members, who work in concert to operate as a 'Gypsy Task Force.'" (AC, Facts Common to All Counts, ¶ 6) Demetro has alleged that NABI is an organization that "intends the full, detailed information on each 'Gypsy' identified on the [NABI website] as well as the information on how to identify potential 'Gypsy' crimes, to be used . . . by law enforcement members, including police officers and prosecutors, in the investigation of crimes in their relative jurisdiction and to target or profile Romani persons." (*Id.* ¶ 34) The Complaint also alleges that Pochek, a NABI member, posted false information about Demetro, a Romani person, to the NABI site. Essentially, the Complaint alleges that NABI is by design a conspiracy to target Romani individuals. Thus, the Complaint sufficiently alleges a concerted action in support of an agreement between NABI and its member to further NABI's alleged purpose of selective targeting of Romani individuals.

Accordingly, the motion to dismiss Count 7 is DENIED.

## IV. CONCLUSION

For the foregoing reasons, NABI's motion (ECF no. 47) to vacate entry of default pursuant to Fed. R. Civ. P. 55(c), and to dismiss the Plaintiffs' amended complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), is GRANTED IN PART and DENIED IN PART, as follows:

1. The motion to vacate entry of default is GRANTED.

2. The motion to dismiss the amended complaint for lack of personal jurisdiction is DENIED.

3. The motion to dismiss the amended complaint for failure to state a claim is GRANTED as to Counts 2, 3, and 4, and also as to Counts 5 and 7 insofar as they assert claims based on reputational stigma alone.

4. The motion to dismiss the amended complaint for failure to state a claim is DENIED as to Count 1 and 6, and also as to Counts 5 and 7 insofar as they assert equal protection claims.

This is the first decision of a motion to dismiss in this case. All dismissals of counts are therefore without prejudice to the filing within 30 days of a motion to file a second amended complaint, conforming to the requirements of the recently enacted Local Civil Rule 15.1. *See* www.njd.uscourts.gov/sites/njd/files/completeRules-7-19-2017R1.pdf.

An appropriate Order follows.

Dated: September 7, 2017

**HON. KEVIN MCNULTY, U.S.D.J.**